## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LASHAWN JOHNSON,

   *Plaintiff*,

  v.

KILOLO KIJAKAZI,

   *Defendant*.

Civil Action No. 18-2749 (TJK)

## <u>MEMORANDUM OPINION</u>

LaShawn Johnson sued the Acting Commissioner of Social Security to challenge the So-cial Security Administration's denial of her application for disability insurance benefits.  Johnson now moves for a judgment reversing that denial, and the Acting Commissioner cross-moves for a judgment affirming it.  Because the Social Security Administration's decision to deny her appli-cation was adequately explained, the Court will deny Johnson's motion and grant the Acting Commissioner's.

### I. Background

In 2015, Johnson applied for disability benefits with the Social Security Administration ("SSA").  *See* ECF No. 4-2 at 14; 42 U.S.C. § 423.  She claimed that a combination of physical and mental infirmities—specifically, kidney disease, obesity, chronic back pain, post-traumatic stress disorder ("PTSD"), and depression—rendered her unable to work, and thus disabled and eligible for benefits, under the Social Security Act ("Act").  *See* ECF No. 4-2 at 16–19; ECF No. 7-1 at 2–3; *see also* 42 U.S.C. § 423(d)(1)(A), (d)(2)(A); 20 C.F.R. § 404.1505(a).

The SSA denied her application on both initial review and reconsideration.  *See* ECF No. 4-2 at 14; 20 C.F.R. §§ 404.900(a)(1)–(2), 404.905, 404.907.  Johnson then requested a hearing

before an administrative law judge ("ALJ").  *See* ECF No. 4-2 at 14; 20 C.F.R. § 404.929.  The assigned ALJ held a hearing and evaluated evidence on Johnson's ability to work, including Johnson's own testimony, treatment reports, mental- and physical-examination findings, and several medical opinions.  *See* ECF No. 4-2 at 18–22.  After that, the ALJ issued a written decision finding that Johnson was not disabled under the statute and thus was ineligible for disability benefits.  ECF No. 4-2 at 14–25.  Johnson appealed that decision, and the SSA Appeals Council denied her request for review, rendering the ALJ's decision the SSA's "final decision" on Johnson's application.  ECF No. 4-2 at 2–4; 20 C.F.R. §§ 404.967, 404.981.

Johnson then sued the Acting Commissioner of the SSA.  *See* ECF No. 1; 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(c).[1]  She moves for a judgment reversing the SSA's denial of her application, requesting either an outright reversal or, in the alternative, a remand to the agency.  *See* ECF No. 7; ECF No. 7-1 at 1–2.  The Acting Commissioner cross-moves for a judgment affirming the SSA's decision.  ECF No. 8.

## II.    Legal Standard

The Court "has jurisdiction over a civil case challenging a final decision of the [SSA]."  *See Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (citing 42 U.S.C. § 405(g)).  The Court "must affirm the . . . decision where it is supported by substantial evidence and not tainted by an error of law."  *Faison v. Colvin*, 187 F. Supp. 3d 190, 193 (D.D.C. 2016) (internal quotation marks omitted).  But the Court "has the authority to reverse or remand the . . . decision if it is not supported by substantial evidence or is not made in accordance with applicable law or reg-

---

[1] Johnson named Nancy A. Berryhill as the defendant.  *See* ECF No. 1 at 1; ECF No. 3 ¶ 2.  Kilolo Kijakazi is now the Acting Commissioner of the SSA, so she is automatically substituted as the defendant.  *See* Fed. R. Civ. P. 25(d).

ulations." *Goodman*, 233 F. Supp. 3d at 104.  To be made in accordance with applicable law and regulations, the decision "must build an accurate and logical bridge" from the evidence to the conclusion so that the Court "may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Henderson v. Saul*, No. 17-cv-2846 (CKK), 2019 WL 5549907, at *6 (D.D.C. Oct. 28, 2019) (cleaned up); *see also Williams v. Colvin*, 134 F. Supp. 3d 358, 364 (D.D.C. 2015).  The party challenging the decision "bears the burden of demonstrating" that it is "not based on substantial evidence or that incorrect legal standards were applied." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).

## III.   Analysis

Johnson argues that the ALJ's decision should be remanded to the SSA because the ALJ failed to explain adequately certain conclusions in his "residual functional capacity" ("RFC") assessment, a part of the overall disability determination.  ECF No. 7-1 at 3–12.[2]  The Court disagrees.

To qualify for disability benefits, Johnson had to establish that she is "disabled" under the Act.  *See, e.g.*, *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  As pertinent here, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that meets certain criteria.  42 U.S.C. § 416(i)(1); *see also id.* § 423(d)(1)(A).  SSA regulations prescribe a five-step sequential evaluation for determining whether a claimant is disabled.  *See Goodman*, 233 F. Supp. 3d at 94 (citing 20 C.F.R. § 404.1520).  In this case, the ALJ proceeded through all five steps to conclude that

---

[2] Johnson also asserts that the decision was not supported by substantial evidence.  *See* ECF No. 7 at 1; ECF No. 7-1 at 1.  But she develops no argument to this effect and has thus forfeited it. *See, e.g.*, *Cox v. Nielsen*, No. 16-cv-1966 (TNM), 2019 WL 1359806, at *14 (D.D.C. Mar. 26, 2019).  And even if she had not, the Court would have little trouble concluding otherwise.

Johnson was not disabled.  ECF No. 4-2 at 14–25.  Johnson objects to the RFC assessment that the ALJ had to undertake before proceeding to steps four and five.  *See* ECF No. 7-1 at 3–12; 20 C.F.R. § 404.1520(a)(4), (e).

In essence, an RFC assessment is a "function-by-function assessment" of a claimant's physical and mental work-related capabilities used to determine "what an individual can still do despite his or her limitations."  SSR 96-8p, 1996 WL 374184, at *2–3, *5–6 (July 2, 1996).  The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion" about the claimant's capabilities, "citing specific medical facts . . . and nonmedical evidence."  *See id.* at *7; *Mitchell v. Berryhill*, 241 F. Supp. 3d 161, 168 (D.D.C. 2017).  To provide the requisite "logical bridge," this "narrative discussion" need not be a "perfectly drafted opinion," but it must enable the Court to "understand the ALJ's route to his conclusion" to permit meaningful review.  *See Lane-Rauth*, 437 F. Supp. 2d at 67–68 (internal quotation marks omitted); *see also Mitchell*, 241 F. Supp. 3d at 168; *Williams*, 134 F. Supp. 3d at 365.  On the one hand, a narrative discussion "simply listing the [claimant's] entire medical history and then conclusively stating" the RFC assessment is typically insufficient.  *See Lane-Rauth*, 437 F. Supp. 2d at 67–68; *see also Williams*, 134 F. Supp. 3d at 363–65.  On the other hand, the narrative discussion generally is adequate if the ALJ does not "merely list the evidence" but also discusses what the evidence shows about the claimant's RFC and explains "which evidence he found credible and why."  *See Pinkney v. Astrue*, 675 F. Supp. 2d 9, 18 (D.D.C. 2009); *see also Goodman*, 233 F. Supp. 3d at 111–12; *Hartline v. Astrue*, 605 F. Supp. 2d 194, 205–06 (D.D.C. 2009).

Here, after thoroughly considering evidence of Johnson's physical and mental capabilities, the ALJ concluded that Johnson was "restricted to a light exertional level of work" as described in SSA regulations, with her physical impairments limiting her to "occasionally climbing

ramps and stairs, climbing ladders, ropes, or scaffolds, stooping, kneeling, crawling, and crouch-ing"; her mental impairments restricting her to performing "simple, routine tasks not at a produc-tion pace," "occasionally adjusting to changes in workplace settings," and "occasionally interact-ing with coworkers, supervisors, and the public"; and her combined impairments limiting her to "being off-task by 10%." ECF No. 4-1 at 18–23. Johnson argues that the ALJ "erroneously as-sessed" her RFC by providing an inadequate "narrative discussion" in three particular ways: (1) he "provided no explanation" for his finding that Johnson would be "off-task by 10%"—that is, that she could remain on task for 90% or more of the workday; (2) he "failed to provide any explanation of the evidence upon which he relied to determine that a limitation to 'simple, rou-tine tasks not at a production pace'" adequately accounted for her mental impairments; and (3) he "failed to provide any explanation of what he meant by the term 'not at a production pace.'" ECF No. 7-1 at 3, 10–11.

First, the Court can "understand the ALJ's route to his conclusion" about Johnson's abil-ity to remain on task for 90% or more of the workday. *See Lane-Rauth*, 437 F. Supp. 2d at 68. The ALJ began his RFC assessment by considering Johnson's own statements about the nature and extent of her physical and mental impairments. ECF No. 4-2 at 19. He then discussed the medical and non-medical evidence in the record, which he found undermined Johnson's "state-ments concerning the intensity, persistence[,] and limiting effects" of her physical and mental symptoms. *Id.* As for Johnson's mental impairments, the ALJ first discussed medical evidence that supported her claimed limitations before reciting medical and non-medical evidence under-cutting her claims. *See id.* at 20–23. The ALJ ultimately concluded that Johnson had "signifi-cantly greater . . . mental functional capacity than alleged," "consistently" exhibiting ordinary mental functioning and requiring only "conservative treatment" to ameliorate her symptoms. *See*

*id.* at 21–22.   As for Johnson's physical impairments, the ALJ discussed medical and non-medical evidence generally showing that, despite her ailments, Johnson had "a normal gait, normal muscle strength, full range of motion in her upper and lower extremities, intact sensation, and independent functional mobility"—in other words, that Johnson had "significantly greater physical . . . capacity than alleged." *Id.* at 20–21.   He also noted that he gave "great weight" to certain medical opinions—ones consistent with this evidence—asserting that Johnson could "lift and/or carry and push and/or pull up to 20 pounds occasionally and 10 pounds frequently," could "sit up to six hours in an eight-hour workday," and could "stand and/or walk for up to six hours in an eight-hour workday." *Id.* at 21.   And he discussed other medical opinions and explained why he gave them less weight. *Id.* at 21–22.   The ALJ's detailed analysis "included sufficient information to satisfy the narrative discussion requirement" for the 10% off-task conclusion. *See, e.g.*, *Goodman*, 233 F. Supp. 3d at 111–12.

Second, the Court can "understand the ALJ's route to his conclusion" about Johnson's ability to do simple, routine tasks not at a production pace despite her mental impairments. *See Lane-Rauth*, 437 F. Supp. 2d at 68.   Again, the ALJ explained in detail the relevant evidence, and after analyzing this evidence he concluded that, despite her PTSD and depression, she consistently manifested ordinary cognitive functioning and had "significantly greater . . . mental functional capacity than alleged." ECF No. 4-2 at 19–22.   Far from providing merely "a laundry list and a conclusion," *see Lane-Rauth*, 437 F. Supp. 2d at 67–68, the ALJ meaningfully discussed what the evidence showed about Johnson's mental capacities, showing why he came to this conclusion, *see, e.g.*, *Hartline*, 605 F. Supp. 2d at 205–06; *accord Sizemore v. Berryhill*, 878 F.3d 72, 79–81 (4th Cir. 2017).

Third, that the ALJ used the phrase "not at a production pace" without explicitly articulating what he meant by it does not frustrate meaningful judicial review of his decision. *See Lane-Rauth*, 437 F. Supp. 2d at 67–68. While courts in other jurisdictions have objected to ALJs using undefined phrases like this one, *e.g.*, *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019), courts in this district have rejected the argument that "the vagueness of the phrase alone requires remand" and have discerned its meaning from context, *e.g.*, *Johnson v. Saul*, No. 19-cv-3829 (RCL), 2021 WL 411202, at *6 n.5 (D.D.C. Feb. 5, 2021) (addressing the phrase "non-production rate pace of work"). Here, the Court can readily discern what the ALJ meant by "not at a production pace." The ALJ explained that Johnson could do "simple, routine tasks" with the caveat that she could *not* do these tasks "at a production pace." ECF No. 4-2 at 23. That is, the ALJ was explaining in general terms the type of work Johnson could do. First, the ALJ described the difficulty of the tasks Johnson could perform, either simple or complex. Second, he described the pace at which Johnson could do the work: either a consistent, assembly-line-type rate or an inconsistent, task-dependent rate—in other words, a "production pace" versus "not at a production pace." *See Johnson*, 2021 WL 411202, at *6 n.5. Thus, the ALJ's use of "not at a production pace" does not require remand. *See, e.g.*, *id*.

## IV.   Conclusion

For these reasons, the Court will deny Johnson's motion and grant the Acting Commissioner's. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 6, 2022

7